UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-61872-CIV-SCOLA
(Ancillary Case No. _____)

CHARLES H. LICHTMAN, as Receiver for
PRIME LEGAL PLANS, LLC, *et al.,*

      Plaintiff,

v.

PRACTICAL SOLUTIONS GROUP, LLC,
a Wyoming limited liability company,
and IGOR BARSKY, an individual,

      Defendants.
_____/

## COMPLAINT

Plaintiff, Charles H. Lichtman (the "Plaintiff"), Receiver, through his undersigned counsel, sues Defendants PRACTICAL SOLUTIONS GROUP, LLC, and IGOR BARSKY and states:

## THE PARTIES

1. Plaintiff, Charles H. Lichtman, is the Court appointed Receiver ("Receiver") for the Receivership Defendants[1], pursuant to court orders entered on September 27, 2012, and October 12, 2012, and February 28, 2013 ("Receivership Orders"), in a civil action brought in the United States District Court for the Southern District of Florida entitled *Federal Trade Commission vs. Prime Legal Plans LLC, et al.,* Case No. 12-cv-61872 ("FTC Case"). The Receiver's place of business is c/o Berger Singerman LLP, 350 East Las Olas Boulevard, Suite 1000, Fort Lauderdale, Florida, 33301.

---

[1] Charles H. Lichtman was appointed Receiver by order of the Court in *Federal Trade Commission vs. Prime Legal Plans LLC, et al.,* Case No. 12-cv-61872 and he controls the assets and affairs of the companies identified as Receivership Defendants in that case. [ECF No. 67, 156].

2. Defendant, PRACTICAL SOLUTIONS GROUP, LLC (f/d/b/a LIBERTY FINANCIAL SOLUTIONS, LLC and also d/b/a SAFEGUARD SOLUTIONS NETWORK, LLC) (collectively "PSG"), is a Wyoming limited-liability company with its principal place of business at 17225 S.W. Dixie Hwy, Ste. 204, Palmetto Bay, FL.

3. Defendant, IGOR BARSKY ("Barsky"), is *sui juris* and is the manager and a member of PSG, and its alter-ego as he orchestrated all operations of PSG and dominated its affairs for all purposes, including for financial gain. Barsky resides at 11599 S.W. 67th Ave, Miami, FL, 33156.

4. Barsky is a business associate of Derek Radzikowski and Jason Desmond, Individual Defendants in the FTC Case.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 754 and principles of supplemental jurisdiction under 28 U.S.C. § 1367. This Complaint is brought in furtherance of and to accomplish the objectives of the Receivership Orders, and therefore, arises out of the Court's exclusive jurisdiction over the receivership estate. The Receiver's claims arise from the underlying mortgage fraud scheme perpetrated in this district and which is at issue in the FTC Case.

6. The Court has personal jurisdiction over the Defendants pursuant to principles of nationwide service of process as provided for under 28 U.S.C. §§ 754 and 1692 and 28 U.S.C. § 1332.

7. Venue is proper in the United States District Court for the Southern District of Florida, Miami Division, under 28 U.S.C. §§ 754 and 1391 as this action is related to, and arises

out of, the underlying FTC Case pending in this district, which resulted in the Receiver's appointment reflected by the Receivership Orders.

## GENERAL ALLEGATIONS

8. Among other duties, the Receivership Orders authorize the Receiver to investigate the affairs of the Receivership Defendants, to marshal their assets, and to institute legal proceedings against individuals or entities that have improperly received money directly or indirectly from or related to the consumers who have been victimized by the Receivership Defendants.

9. The Receivership Defendants and related individuals engaged in multiple wrongful acts, including violating federal laws related to their mortgage assistance relief services scheme perpetrated against consumers nationwide (the "Legal Plans Scheme").  As described below, the Defendants in this case were actively involved in the Legal Plans Scheme, received transfers from its operations and continue to hold profits generated by the Legal Plans Scheme.

10. Defendants were front-end solicitors of consumers for the Legal Plans Scheme and operated as the "S. Miami" "Branch" office affiliate of the Receivership Defendants located at 17225 S.W. Dixie Highway, Suite 204, Palmetto Bay, FL.  Exhibit A.

11. Defendants used several business names during the operation of the Legal Plans Scheme, including "Practical Solutions Group, LLC", "Liberty Financial Solutions, LLC", and "Safeguard Solutions Network, LLC" which each operated out of the same principal place of business: 17225 SW Dixie Hwy, Ste, 204, Palmetto Bay, Florida.

12. Defendants used various websites including "www.123keepmyhome.com" and "www.123psg.com" along with several e-mail domains, including "@123psg.com", and

"@mylibertyfinancial.com", to correspond with the Receivership Defendants and victims of the Legal Plans Scheme.

13. Defendants used the same form "Membership Agreement" used by the Receivership Defendants and held themselves out to consumers as a "Practical Solutions Group LLC providers of Prime Legal Plans".

14. Defendants also used the same Meracord, LLC (f/k/a Noteworld, LLC) ("Meracord") Sign-Up form used by the Receivership Defendants during the enrollment of other consumers into the Legal Plans Scheme. Meracord served as the third-party payment processor which, as the Receivership Defendants and Defendants enrolled consumers in the Legal Plans Scheme, received authorizations from consumers that allowed Meracord to access the consumers' bank accounts and draw monthly payments to fund the Legal Plans Scheme.

15. Once monthly payments were drawn from the consumers' respective bank accounts, the funds drawn were allocated to accounts at Meracord which were controlled by the Receivership Defendants. Funds were then distributed to the Receivership Defendants and the Receivership Defendants' co-conspirators, including Defendants (the "Transfers"), according to instructions provided to Meracord by the Receivership Defendants.

16. Defendants received at least $1,085,493.68 in Transfers during the operation of the Legal Plans Scheme. The Receiver's compilation spreadsheet showing the Transfers received by Defendants is attached as Exhibit B.

17. Defendants were actively engaged in the marketing, sale, and perpetuation of the Legal Plans Scheme and worked directly with the Receivership Defendants to acquire and retain consumers caught in the Legal Plans Scheme. Defendants assisted the Receivership Defendants in the development of sales scripts, the "Membership Agreement" used by Defendants, the

Receivership Defendants and other co-conspirators and entered into an "Affiliate Office Agreement" with the Receivership Defendants to market and sell the Legal Plans Scheme to consumers. The "Affiliate Office Agreement" was between both PSG, and Barsky, individually, and Affiliate Management Group, LLC, a Receivership Defendant. The "Affiliate statement of complaint – S. Miami" was signed by Barsky as "Branch Owner" and is attached hereto as Exhibit C.

18.     Defendant Barsky also worked directly with the operators of the Legal Plans Scheme to respond to investigation by The Florida Bar into the Legal Plans Scheme and its operations.

19.     Accordingly, Defendants are co-conspirators with the Receivership Defendants and took unlawful profits from the Legal Plans Scheme.

20.     Further, the Receivership Defendants received no value for the Transfers made to Defendants during the operation of the Legal Plans Scheme.

**Defendant Practical Solutions Group, LLC Is The Alter-Ego Of Defendant Igor Barsky.**

21.     Barsky was the sole member of PSG and its Manager. PSG was the successor to Liberty Financial Solutions, LLC, a Florida limited-liability company which was administratively dissolved on October 24, 2011. During the operations of the Legal Plans Scheme, Barsky dominated and controlled PSG to such an extent that the individuality and separateness of PSG ceased.

22.     Barsky disregarded PSG's corporate form and PSG was so inadequately capitalized that its capitalization was illusory, such that allowing PSG to remain distinct would result in inequity.

23. In the Direct Deposit (ACH Credit) Authorization Form documents Barsky submitted to Meracord for the receipt of payments from consumers caught in the Legal Plans Scheme, Barsky provided the same Wells Fargo, N.A. bank account number for *both* "Practical Solutions Group, LLC" and to "Igor Barsky". Exhibit D.

24. PSG was operated solely for the personal benefit of Barsky and any separate corporate existence should be disregarded.

25. Further, Barsky is not shielded from personal liability as PSG was used by him to mislead consumers in furtherance of the Legal Plans Scheme and for the purposes of committing the illegal acts set forth in the FTC Case.

## COUNT I – UNJUST ENRICHMENT

26. The Receiver re-alleges the allegations set forth in paragraphs 1 through 25, and incorporates those allegations by reference.

27. As detailed above, Defendants knowingly and voluntarily accepted and retained $1,085,493.68 from the operation of the Legal Plans Scheme.

28. The monies transferred to Defendants, directly or indirectly, by Receivership Defendants and/or the Receivership Defendants' accounts Meracord, have not been repaid to the Receivership Defendants, nor have Defendants provided lawful goods or services to the Receivership Defendants in exchange for the transfer of these monies.

29. The Receivership Defendants are defendants in the FTC Case and liable for the full amount of the ill-gotten gains generated by the Legal Plans Scheme, including the funds transferred to Defendants. Based upon the Defendants' use of the Legal Plans Scheme for profit, Defendants have received and appreciated benefits under circumstances by which it would be

unfair and unjust for Defendants to retain such benefits without compensation to the receivership estate.

30.   The monies transferred to Defendants belong to the Receivership Defendants, their creditors and the consumer victims of the Legal Plans Scheme, and continue to be wrongfully retained by Defendants.  As such, the Receivership Defendants, through the Receiver, have suffered damages and are entitled to disgorgement of those monies from Defendants so that the monies may be returned to the defrauded consumer victims of the Legal Plans Scheme to which Defendants were material co-conspirators.

31.   Alternatively, the Receivership Entities are entitled to a constructive trust for the amount of Transfers given that it would be inequitable for Defendant to retain possession of these monies

**WHEREFORE**, the Plaintiff respectfully requests the Court to enter a Judgment:

a.   Declaring the Defendants were unjustly enriched by virtue of receipt o the Transfers;

b.   Requiring the payment of the full amount of the Transfers; and, if necessary, imposing a constructive trust and/or equitable lien on the funds or assets traceable to such transfers in the amount paid to Defendants during the operation of the Legal Plans Scheme, in an amount no less than $1,085,493.68;

c.   Awarding the Plaintiff damages, costs, and interest; and

d.   Granting such other and further relief as may be just and proper.

**COUNT II – RESTITUTION/MONEY HAD AND RECEIVED AGAINST DEFENDANTS**

32.   The Receiver re-alleges the allegations set forth in paragraphs 1 through 25, and incorporates those allegations by reference.

33. The Receivership Defendants conferred a benefit on the Defendants when it and/or Meracord transferred funds constituting the property of the Receivership estate in the amount of no less than $1,085,493.68 to the Defendants as payment for soliciting consumers into and for the Legal Plans Scheme.

34. Defendants received the benefit of the funds they received from the Receivership Defendants and voluntarily accepted and retained the benefit conferred to the Defendants to which the Defendants were not entitled.

35. Equity and good conscience dictates that the Defendants should return and repay the funds received and any assets they may have acquired with those funds, to the Receiver for the benefit of all of the receivership estate.

**WHEREFORE**, the Plaintiff respectfully requests the Court enter a Judgment:

a. Ordering the Defendants to make restitution to the Receivership Estate;

b. Requiring the payment of the Transfers to the Plaintiff; and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such transfers;

c. Awarding the Plaintiff damages, costs, and interest; and

d. Granting such other and further relief as may be just and proper.

**DATED** this 16th day of July, 2014.          Respectfully submitted,

                                                     BERGER SINGERMAN LLP
*Attorneys for the Receiver, Charles H. Lichtman*

By:   /s/ Gavin C. Gaukroger
       Gavin C. Gaukroger
       Florida Bar No. 76489
       ggaukroger@bergersingerman.com
       350 East Las Olas Blvd.
       Suite 1000
       Fort Lauderdale, Florida 33301
       Main Line: (954) 525-9900
       Facsimile: (954) 523-2872